# IN THE COURT OF APPEALS OF IOWA

No. 19-2021
Filed February 3, 2021

**JOHN SCHONDELMEYER,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Mills County, Gregory W. Steensland, Judge.

     A prisoner appeals the denial of his application for postconviction relief. **AFFIRMED.**

     Nicholas A. Sarcone of Stowers & Sarcone PLC, West Des Moines, for appellant.

     Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

     Heard by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

John Schondelmeyer appeals the denial of his application for postconviction relief from two counts of sexual abuse in the second degree and two counts of lascivious acts with a child. He claims the State violated his right to due process by suppressing results of medical examinations conducted on the two girls who reported the abuse. He also alleges his attorney provided ineffective assistance of counsel. Because we find no constitutional violations, we affirm his convictions.

## I.      Facts and Prior Proceedings

The girls, ages seven and eight, called their grandfather, "Papa John," and looked forward to having him babysit. But after he spent the night at their home in late September 2013, their mother noticed the girls engaging in sexualized play.[1] The girls later revealed that "Papa John" had climbed into their double bed and touched them "in the bad spots." Their parents went to the Mills County Sheriff's Office. The sheriff referred the girls to Project Harmony, a child advocacy center in Omaha, Nebraska. At Project Harmony, the girls each participated in a forensic interview with a social worker. After their interviews, they underwent medical examinations, which revealed no physical evidence of abuse.

In November 2013, the State filed a trial information, alleging Schondelmeyer committed two counts of sexual abuse in the second degree (one against each girl) and two counts of lascivious acts with a child (again one against each girl). For both counts of sexual abuse, the State included this description of the conduct: "[Schondelmeyer] licked [the child's] vaginal area and inserted his

---

[1] The younger girl was her daughter and the older girl was her stepdaughter. These half-sisters shared a bedroom.

tongue inside her vagina, in violation of Iowa Code Sections 709.1 and 709.3(2)." But at trial the girls testified to different acts. The younger girl testified Schondelmeyer touched her "privates" under her pajamas with his hand. In similar testimony but with more detail, the older girl recalled that their grandfather "touched our private areas" in the front and back. She testified he used his hand and his finger. When the prosecutor asked if she ever felt his finger "inside" of her, the older girl said "yes." When asked if it hurt, the witness said "yes."

On direct appeal, Schondelmeyer challenged the sufficiency of the State's evidence. He also claimed the district court mistakenly excluded an allegation of prior sexual abuse by one of the girls. We rejected both claims and affirmed his four convictions. *State v. Schondelmeyer*, No. 14-0621, 2015 WL 1817030, at *5 (Iowa Ct. App. Apr. 22, 2015).

About one year later, Schondelmeyer applied for postconviction relief. The application alleged that trial attorney William McGinn provided ineffective assistance of counsel by not raising the factual variance between the trial information and the girls' testimony in the motion for judgment of acquittal and by not objecting to the jury instructions for sexual abuse.

In October 2018, Schondelmeyer amended the application to add a due-process claim, alleging the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing the written reports summarizing the girls' medical examinations at Project Harmony. For both girls, those reports revealed: "The pubis, the perineum, the labia majora are all intact. The posterior forchette is intact. The hymen has a continuous hymenal border with a smooth hymenal surface." Both reports stated

that a normal genital exam "neither confirms nor excludes the possibility of sexual abuse."

During the postconviction proceedings, Schondelmeyer secured the expert opinion of Dr. Ross Valone, a physician specializing in obstetrics and gynecology with forty plus years of experience. In his deposition, Dr. Valone stated that the physical findings meant "[t]here's been no perforation of the hymenal orifice and no trauma." He said that in his experience, "digital penetration by an adult finger in a six-year-old child will cause perforation of the hymen." In his view, "if there's digital penetration, there's generally evidence." So here, Dr. Valone offered the opinion: "Based on the forensic exam, I believe the girls were not telling the truth when they claim there was digital penetration."

To complete the postconviction record, the State offered the deposition testimony of attorney McGinn. He testified that the defense strategy was to impugn the credibility of the girls. When asked about the forensic interviews, McGinn said: "[T]he Project Harmony reports, those were something that I could—that I could not get." McGinn deposed the social worker but recalled "some resistance" to his request for video recordings of the forensic interviews.[2]

In his trial preparation, McGinn noticed the mention of "licking or oral sex" only in the trial information. When he deposed the girls, they did not say that Schondelmeyer "licked" them. McGinn acknowledged that he did not raise the variance in moving for judgment of acquittal nor as an objection to the jury instructions. He conceded that in hindsight he might have challenged the different

---

[2] The State did not present those interviews at trial.

alternative for committing the sexual abuse but reasoned "it was harmless error not to change it."

As for the physical evidence, McGinn testified he couldn't remember if he "saw the medical examination or not." When asked if he requested those records, McGinn responded that his understanding was "since the State had a witness from Project Harmony . . . that [he] would be provided with whatever was there, so [he] didn't think a formal request was necessary." When confronted with the evidence that both physical exams showed a "normal vaginal area, including an intact hymen," McGinn acknowledged that information would have helped impeach the girls' testimony. McGinn confirmed that if the State had possessed this information, he "would have liked to have had this, yes." But he also agreed that not every case of sexual abuse includes "a physical sign or injury."

The district court denied the application for postconviction relief. The ruling borrowed heavily from the State's brief in opposition to the application for postconviction relief. On the *Brady* issue, the court found "no affirmative evidence put forward by Schondelmeyer that the State had access to, or knowledge of, the reports in question." On the flipside, the court noted: "[T]here is affirmative evidence that Schondelmeyer, and his defense counsel, Mr. McGinn, knew or should have known of the essential facts contained within the medical examination reports." The court also held the medical reports were not favorable to Schondelmeyer or material to his guilt. On the claims of ineffective assistance, the court found McGinn's failure to obtain the medical reports was "trial strategy" and did not prejudice Schondelmeyer. The court also decided McGinn's failure to

challenge the factual variance between the trial information and the girls' testimony did not rise to the level of ineffective assistance of counsel.

Schondelmeyer appeals.

## II.      Scope and Standards of Review

In general, we review the denial of postconviction relief for correction of legal error.  *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018).  But we switch to de novo review when the basis for relief implicates a constitutional right.  *Id.*

Before reaching the merits, we address the district court's overreliance on the State's trial brief.  Our supreme court has "admonished trial courts from the wholesale adoption of one party's advocacy because 'the decision on review reflects the findings of the prevailing litigant rather than the court's own scrutiny of the evidence and articulation of controlling legal principles.'"  *See Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 97 (Iowa 2011) (quoting *Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 266 (Iowa 2002)).  "Normally, when the district court incorporates verbatim a party's brief, we will 'scrutinize the record more closely and carefully when performing our appellate review.'"  *Id.* (quoting *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010)).  But here, as in *Soults Farms*, our de novo review requires us to reach our own findings of fact.  *See id.*  Although we engage in no heightened scrutiny, we repeat the admonition that courts should determine the facts and apply the law so that both sides can be confident the court fairly considered their positions.

### III.    Analysis

### A.    Brady Violation

Schondelmeyer opens with his due-process challenge. To establish a *Brady* violation, Schondelmeyer must prove by a preponderance of the evidence (1) the State suppressed evidence; (2) that evidence was favorable to him; and (3) it was material to his guilt. *See DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011). On the first prong, the State's duty to disclose exculpatory evidence exists even if the defense did not request *Brady* material. *Id.* And the prosecution must learn of favorable evidence known to others acting on the State's behalf in the case, including law enforcement. *See State v. Jones*, 817 N.W.2d 11, 21 (Iowa 2012). But we do not consider evidence "suppressed" in a constitutional sense if the defendant or his attorney knew or should have known "essential facts permitting [them] to take advantage of the evidence." *Harrington v. State*, 659 N.W.2d 509, 522 (Iowa 2003).

On the suppression issue, the parties debate whether the prosecution—or at least the Mills County Sheriff—possessed the Project Harmony medical reports.[3] As an alternative argument, Schondelmeyer insists Project Harmony is "part of the investigation and prosecution team" because the sheriff and the Iowa Department of Human Services arranged for the girls' forensic interviews and medical exams. But we need not wade into those disagreements.

---

[3] Schondelmeyer's attorney exchanged emails with the sheriff's records clerk, who confirmed the medical reports were in their files but had no documentation as to when the office received them.

Rather, we find it dispositive that attorney McGinn knew "the essential facts" permitting him to use any favorable evidence from the child protection center. The record shows McGinn discovered during the deposition of the girls' mother that they returned to Project Harmony after their forensic interviews for medical exams. McGinn asked the mother if she had seen "any reports from the exam." And she answered: "just that they were healthy." If the medical reports were of any help to Schondelmeyer, McGinn knew about them in time to take advantage at trial. *See State v. Piper*, 663 N.W.2d 894, 905 (Iowa 2003) (finding no *Brady* violation when the State failed to timely disclose video crime-scene footage that reinforced defense counsel's understanding that investigators were unable to obtain fingerprints from the murder victim's body), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010).

Schondelmeyer grants that McGinn knew the girls had undergone physical exams but insists counsel did not know the exculpatory details. But that unawareness stemmed from McGinn's own lack of diligence.[4] No suppression occurred because the defense, before trial, "had within their knowledge the information by which they could have ascertained the alleged *Brady* material." *See United States v. Griggs*, 713 F.2d 672, 674 (11th Cir. 1983). True, counsel's grasp of the existence of witnesses—without investigative reports to help clarify what favorable information they might have for the defense—will not immunize the State from a *Brady* violation. *See Harrington*, 659 N.W.2d at 522. But McGinn had

---

[4] Schondelmeyer recognizes counsel's failure to pursue the medical reports because he also raises this issue as an ineffective-assistance claim.

enough information to learn that the girls' medical exams may have strengthened his client's position.

Even if the medical reports were exculpatory evidence, a question we do not reach, we find no *Brady* violation. McGinn knew before trial that the reports existed and allegedly contained facts favorable and material to the defense. We will address his failure to act in the next section.

### B. Ineffective Assistance of Counsel

For relief on his claims of ineffective assistance, Schondelmeyer must show (1) attorney McGinn failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Ledezma v. State*, 626 N.W.2d 134, 141–42, 145 (Iowa 2001). On the duty prong, Schondelmeyer must show counsel made errors so serious he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*, 466 U.S. at 687. On the prejudice prong, Schondelmeyer must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020) (quoting *Strickland*, 466 U.S. at 694).

Schondelmeyer raises a trio of ineffective-assistance claims. The first relates to his *Brady* challenge. Schondelmeyer contends attorney McGinn performed below professional norms by failing to investigate and obtain the girls' medical reports. The second and third claims stem from a common nucleus—the variance between the trial information (alleging oral sex) and the girls' testimonies (alleging contact between Schondelmeyer's finger or hand and their genitals).

Schondelmeyer claims his attorney should have pointed to that discrepancy in moving for judgment of acquittal and should have objected to the jury instructions for the counts of sexual abuse. We will address each claim in turn.

### 1. Failure to Investigate and Obtain Medical Examinations

Inverting his position from the *Brady* claim, Schondelmeyer contends attorney McGinn knew enough about the girls' medical exams that he breached a material duty by not obtaining a copy of the findings from Project Harmony. McGinn learned from deposing their mother that the reports showed the girls were "healthy." But McGinn did not follow up on that information. Why not? McGinn testified he thought the State would turn over any records from Project Harmony and that a formal request was unnecessary. Schondelmeyer argues counsel's failure was not strategic and prejudiced his defense.

The State counters that McGinn did not have a material duty to investigate and discover facts not favorable to either party. To emphasize the neutral nature of the evidence, the State points to attorney McGinn's testimony that the lack of genital injury does not prove the girls did not experience sexual abuse. The same refrain appeared in the district court's ruling, which asserted: "It is commonly known, especially among medical practitioners and attorneys that, just because there are 'no tears, hematomas, rashes, lacerations, or other evidence of injury' in a forensic examination does not mean that sexual assault did not occur."[5] Echoing

---

[5] The district court quoted this testimony from Sarah Cleaver, a pediatric nurse practitioner for Project Harmony. The State attached her deposition—taken in the prosecution of a different defendant—to its brief in resistance to Schondelmeyer's postconviction application. In his motion to reconsider the postconviction ruling, Schondelmeyer moved to strike that deposition from the record, asserting he had no notice of its contents and no chance to cross-examine Cleaver. The district

that sentiment, the State now asks us to "resolve this claim on the basis of medical science and common sense: normal examination findings and a lack of hymenal injury are not 'favorable'" to Schondelmeyer.

We are skeptical of the State's appeal to "common sense" in the context of medical findings. The subject of "genital trauma" is "sufficiently beyond common experience" that an expert opinion is critical to deciding whether the girls' medical exams presented exculpatory evidence for Schondelmeyer. *White v. Frauenheim*, No. 1:16-cv-01436-DAD-JLT, 2017 WL 3069690, at *7 (E.D. Cal. July 19, 2017) (quoting Cal. Evid. Code § 801(a)). Indeed, the State recognizes this reality because it cites several articles from medical journals in its brief.[6] But the State did not present that information to the district court in the postconviction proceedings. Instead, the court had the unsworn statement from the Project Harmony reports that a normal genital exam "neither confirms nor excludes the possibility of sexual abuse." And pitted against that statement, the court had Dr. Valone's opinion that digital penetration by the finger of an adult would "cause perforation of the hymen" in a child as young as Schondelmeyer's granddaughters.[7] In this realm of medical opinion, we decline to depend on common sense to resolve Schondelmeyer's claim.

---

court denied the motion to reconsider without addressing the motion to strike. We agree with Schondelmeyer that the court's reliance on this evidence from a different case was improper. In our de novo review, we disregard Cleaver's deposition.

[6] The State also reiterates the expert opinion from nurse practitioner Cleaver in an unrelated case.

[7] The postconviction ruling mentioned Dr. Valone's testimony in analyzing the *Brady* claim, but the court did not rely on it or make an express finding that it lacked credibility.

Schondelmeyer contends that had McGinn effectively used the findings of normal genital exams—in tandem with the expert opinion from Dr. Valone—that evidence would have called "into serious question the veracity of the two complaining witnesses." But looking at "the totality of the evidence," we detect no reasonable probability of a different outcome had attorney McGinn obtained the Project Harmony medical reports.[8] *See State v. Ambrose*, 861 N.W.2d 550, 557 (Iowa 2015) (explaining prejudice prong of *Strickland*). "The likelihood of a different result must be substantial, not just conceivable." *Id.* The possibility of a different result had McGinn obtained the medical reports does not undermine our confidence in the outcome.

We base this lack-of-prejudice finding on three key considerations. First, as Schondelmeyer admits on appeal, "sex abuse can involve touching other than digital or genital penetration, such as rubbing, fondling or touching." For the most part, it was this sort of "other touching" that the girls described in their trial testimony. In fact, the younger girl denied that Schondelmeyer used his finger when he touched her "bad spots," affirming that he only used his hand. True, the older girl did testify that Schondelmeyer used both his hand *and his finger* to touch her "private areas." But her answers suggesting digital penetration were vague, brief, and led by the prosecutor's questions:

> Q. Where did you feel his finger? . . . Did you ever feel it inside of you? A. Yes.

---

[8] We need not address whether attorney McGinn breached a material duty by not obtaining the reports in his preparation for the criminal trial. *See State v. Clay*, 824 N.W.2d 488, 501 n.2 (Iowa 2012) ("The court always has the option to decide the claim on the prejudice prong of the *Strickland* test, without deciding whether the attorney performed deficiently.").

Q. Did it hurt? A. Yes.

Based on this testimony, it is far from clear that the eight-year-old was recounting the sort of digital penetration necessary to "cause perforation of the hymen" as described by Dr. Valone.[9]

Which brings us to our second point—a jury is free to give the opinion of an expert like Dr. Valone "as much weight as it thinks [that view] deserves." *See Crow v. Simpson*, 871 N.W.2d 98, 107 (Iowa 2015). We see no substantial chance that had attorney McGinn tried to use expert testimony to impeach that isolated response by the eight-year-old witness, the jury would have discounted the entire testimony of both girls.

Which segues to the third factor, the girls offered convincing testimony; each corroborated the other's recollections of abuse. While it is obvious—even from the cold transcript—that neither girl relished the experience of testifying, both gave consistent versions of what happened when Schondelmeyer babysat for them. The State also presented testimony from the girls' mother. In the weeks after that overnight, she noticed unusual play among her daughters, which led her to ask if they had "ever been touched" by an adult. Their responses prompted the parents to contact authorities. All in all, the strength of the State's case against Schondelmeyer diminishes the likelihood of a different outcome had attorney McGinn obtained the medical reports. Under these circumstances, it is not reasonably probable that, but for counsel's omission, the result of the proceeding

---

[9] As the State argues: "A child's description of something going 'inside' and causing pain is not a declaration that the child sustained a hymenal injury, and cannot be disproven by an examination that finds no such injury was sustained (if, indeed, such findings can even be made, weeks after the event)."

would have been different. *See State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) (noting "most important factor under the test for prejudice is the strength of the State's case").

**2.    Failure to Raise Variance Between Sex Acts Alleged in Trial Information and State's Evidence Adduced at Trial in Moving for Judgment of Acquittal**

Schondelmeyer's second and third claims of ineffective assistance of counsel stem from a variance between the facts supporting the two sexual-abuse counts in the trial information and the girls' testimony at trial. In the trial information, the State alleged:

> Said Defendant, on or about the 29th day of September, 2013, in Mills County, Iowa, unlawfully committed Sexual Abuse upon Jane Doe, a child under the age of twelve (12) years, to-wit: Licked Jane Doe's vaginal area and inserted his tongue inside her vagina, in violation of Iowa Code Sections 709.1 and 709.3(2) [(2013)].

But at trial, the girls testified to a different sex act. *See* Iowa Code § 702.17 (listing five means of sexual contact, including contact between "the mouth and genitalia" and "contact between the finger or hand of one person and the genitalia or anus of another person"). The seven-year-old girl testified Schondelmeyer touched her "privates" with his hand; the eight-year-old girl testified he placed his finger "inside" her "private area." In moving for judgment of acquittal, attorney McGinn stressed the "inconsistencies" in the girls' testimonies. But he did not object to the State's departure from the facts alleged in the trial information.

In the postconviction proceedings, Schondelmeyer claims counsel was remiss in not raising and litigating that "a material variance existed between the charge as described in the trial information and the evidence adduced at trial." He

notes that the minutes of testimony also focused on oral sex in the girls' bedroom. He clarifies: "There are opaque references to touching which occurred at their home but it is not at all clear if this touching is separate from the alleged licking or incorporative thereof." Schondelmeyer argues McGinn should have moved for judgment of acquittal on those grounds. Schondelmeyer contends he was prejudiced because counsel "was not properly apprised of the conduct forming the basis of the charge."

Answering these contentions in his deposition, McGinn testified that he did not move for a judgment of acquittal on this variance because it would not have made a difference: "The licking and finger are both the same . . . it could be one or the other. It doesn't change the charges against the defendant. The defendant is still on notice." Had he objected, McGinn believes the prosecutor could have amended the trial information to conform to the proof. *See* Iowa R. Crim. P. 2.4(8).

Using that testimony as a jumping off point, the State argues any breach of duty was "non-prejudicial, because the result would have been the same, but with an amended trial information in the case file." We agree with the State's assessment. "[A]s amendment was allowable, no prejudice resulted." *See Powell v. State*, No. 15-1004, 2016 WL 1696904, at *1–3 (Iowa Ct. App. Apr. 27, 2016).

**3. Failure to Object to Jury Instructions Including Alternative Definitions of Sex Acts**

In a related challenge, Schondelmeyer contends attorney McGinn breached a duty by not objecting to the jury instructions for sexual abuse. Those instructions defined "sex act" by listing all five alternatives from Iowa Code section 702.17. Schondelmeyer argues that even if the State could have amended the trial

information to conform to the proof at trial, he was "still prejudiced by the inclusion of all the alternatives of committing a sex act in the jury instructions."

In response, the State argues McGinn was not ineffective in failing to object to the instruction defining sex acts. Its argument is nuanced. Granted, defense counsel had a duty to object to "unsupported legal theories." But the State contends counsel had no similar duty to object to "extraneous portions of definitional instructions."[10] As for prejudice, the State argues there was no reasonable probability of a different result had counsel sought a narrower definition of "sex acts."

Like the State, we discern no prejudice in McGinn's failure to object to the definitional instruction listing superfluous "sex act" alternatives. We are confident the jury would have returned the same verdicts even if the definition had been narrowed. Our confidence is bolstered by reviewing the State's closing argument. The prosecutor pointed to the jury instruction defining sex act and highlighted only the alternative of contact "between the finger or hand of one person and the genitals or anus of another." *See State v. Thorndike*, 860 N.W.2d 316, 322 (Iowa 2015) (finding no prejudice from superfluous alternatives in lascivious-acts instruction because the State "made no argument to the jury that the unsupported alternative applied"). This claim provides no basis for postconviction relief.

---

[10] The State cites two of our unpublished decisions in support of its position. *See Ayabarreno v. State*, No. 18-1973, 2020 WL 375939, at *3 (Iowa Ct. App. Jan. 23, 2020) (distinguishing definitional instruction from marshaling instruction); *State v. Arneson*, No. 16-0808, 2017 WL 4049324, at *1 (Iowa Ct. App. Sept. 13, 2017) (rejecting challenge to "unsupported alternatives" within model jury instruction's five-part definition of the term "sex act").

After reviewing all three of Schondelmeyer's claims of ineffective assistance of counsel, we find no prejudice from the alleged errors, either individually or cumulatively. *See Clay*, 824 N.W.2d at 501–02. We thus affirm the denial of postconviction relief.

**AFFIRMED.**